UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WALTER R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-01042-DLP-SEB |
| | ) | |
| ANDREW M. SAUL, Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON COMPLAINT FOR JUDICIAL REVIEW

Plaintiff Walter R.[1] seeks judicial review of the denial by the Commissioner

of the Social Security Administration ("Commissioner") of his application for Social

Security Disability Insurance Benefits ("DIB") under Title II of the Social Security

Act ("the Act"). *See* 42 U.S.C. §§ 423(d), 405(g). For the reasons set forth below, this

Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and

**REMANDS** this matter for further consideration.

## I. PROCEDURAL HISTORY

On October 8, 2014, Walter filed for disability and disability insurance

benefits, alleging that his disability began on April 15, 2014. Walter asserts that his

disability is caused by shoulder problems, gastroesophageal reflux disease (GERD)[2],

---

[1] The Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.
[2] GERD is chronic heartburn and acid reflux. Gastroesophageal reflux disease (GERD), Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/gerd/symptoms-causes/syc-20361940 (last visited July 29, 2019).

chronic venous insufficiency[3], non-insulin dependent type II diabetes, recurrent

cellulitis[4] of the lower left leg, hypertension, headaches, insomnia, obesity, and

depression. Walter's claim was denied initially and upon reconsideration. Walter

then filed a written request for a hearing on August 12, 2015, which was granted.

On May 1, 2017, Administrative Law Judge ("ALJ") Albert J. Velasquez

conducted the hearing, where Walter and a vocational expert testified. On August

29, 2017, ALJ Velasquez issued an unfavorable decision finding that Walter was not

disabled as defined in the Act. On February 13, 2018, the Appeals Council denied

Walter's request for review of this decision, making the ALJ's decision final. Walter

now requests judicial review of the Commissioner's decision. *See* 42 U.S.C. §

1383(c)(3). On August 7, 2019, the Court held oral argument.

## II.  STANDARD OF REVIEW

To prove disability, a claimant must show he is unable to "engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423(d)(1)(A).  To meet this definition, a claimant's impairments must be of

such severity that he is not able to perform the work he previously engaged in and,

---

[3] Chronic venous insufficiency occurs when the venous wall or valves in the leg veins are not working
effectively, making it difficult for blood to return to the heart from the legs. This can cause blood to
pool in these veins. Chronic Venous Insufficiency (CVI), Cleveland Clinic,
https://my.clevelandclinic.org/health/diseases/16872-chronic-venous-insufficiency-cvi (last visited
July 29, 2019).
[4] Cellulitis is a common but potentially serious bacterial skin infection that usually affects the lower
legs. If untreated, the infection can spread to the lymph nodes and bloodstream, becoming life-
threatening. Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/cellulitis/symptoms-
causes/syc-20370762 (last visited July 22, 2019).

based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520. The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [him] unable to perform [his] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; Briscoe, 425 F.3d at 352. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant—in light of his age, education, job experience and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Walter is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

In this substantial-evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues, *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a

minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d at 872.

## III. BACKGROUND

### A. Factual Background

Walter was 42 years old at the time of the alleged onset date in 2014. [Dkt. 5-3 at 2 (R. 54).]. He obtained his General Educational Development ("GED") in 2012 followed by eight months of college courses at Ivy Tech. [Dkt. 5-2 at 40-41 (R. 39-40).] The Plaintiff last engaged in substantial gainful activity in April 2014 when he worked as a mechanic for Pep Boys. [Dkt. 5-2 at 39 (R.38).].

### B. Medical History

On March 1, 2012, Walter went to the emergency department at St. Vincent hospital complaining of lower left leg cellulitis. While at the hospital, the medical staff performed an ultrasound of the legs, which revealed no evidence of deep vein thrombosis ("DVT")[5] but some abnormality with a lymph node. The staff

---

[5] DVT occurs when a blood clot forms in one or more deep veins in the body, most commonly in the legs. DVT can cause leg pain or swelling or occur with no symptoms at all. Deep vein thrombosis (DVT), Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/deep-vein-thrombosis/symptoms-causes/syc-20352557 (last visited July 22, 2019).

administered an IV for Walter and his condition improved. Walter was released from St. Vincent the next day.[6] [Dkt. 5-10 at 58–78 (R. 496–521).]

On April 17, 2013, Walter visited IU Health Methodist Hospital emergency room complaining of severe dental pain, including swelling, redness, and bleeding of the mouth. The medical staff noted Walter reported having a headaches and his history of hypertension. He was given over-the-counter pain medication and instructions to visit a dentist. [Dkt. 5-8 at 11–13 (R. 285–87).]

On May 6, 2013, Walter visited Dr. Mark Freije at Westfield Primary Care. Dr. Freije noted that Walter was not taking hypertension medication, that he reported issues with daily fatigue and sleeping, and that he was experiencing chronic joint pain in his shoulder. Dr. Freije also noted that Walter had developed a skin rash. At the conclusion of the visit, Dr. Freije placed Walter on hypertension medication and prescribed him testosterone for his fatigue and a topical cream for his rash. [Dkt. 5-7 at 27–29 (R. 238–40).]

On August 12, 2014, Walter presented to IU Health Methodist Hospital emergency department complaining of lower left extremity pain, erythema,[7] and swelling. He stated that his pain was a 10 out of 10 and that he had a fever as high as 103 degrees. Medical personnel noted that at the time of his visit Walter did not have a fever and that his pain eventually subsided to a 3 or 4 out of 10. Walter

---

[6] Based on St. Vincent's record of this visit, Walter attempted to go to IU Health Methodist Hospital emergency room first but there were no beds available there.

[7] Erythema is skin redness and swelling that can last for weeks. Erythema Multiforme, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/erythema-multiforme (last visited July 29, 2019).

notified staff that he had visited the emergency room about 20 times in the last 15 years for the same symptoms. He was diagnosed with recurrent cellulitis and the doctor noted a history of hypertension and GERD. [Dkt. 5-8 at 14–24 (R. 288–98).] The next day, Walter had a venous duplex scan performed on his legs, which indicated that there was no evidence of DVT in either leg. [Dkt. 5-8 at 41 (R. 315).] There were some issues with the lymph nodes in his left leg, but the scan was otherwise unremarkable and unchanged from scans performed in February 2012 and October 2011. [*Id.*] Walter was discharged the next day with antibiotics and a recommendation to follow up with his primary care physician. [Dkt. 5-8 at 14–24 (R. 288–98).]

On September 6, 2014, Walter presented to the IU Health Methodist Hospital emergency room complaining of shortness of breath and chest pain. His initial examination was normal and showed no signs of abnormalities. [Dkt. 5-8 at 46 (R. 320).] Dr. Jeffrey Mossler performed an electrocardiogram ("EKG"), which was normal, [Dkt. 5-8 at 42 (R. 316).] and Dr. Jessica Smith performed a chest x-ray, which was also normal. [Dkt. 5-7 at 14 (R. 225).] Walter was later discharged. [*Id.*]

On September 17, 2014, Walter visited Dr. Keith Banks at Infectious Disease of Indiana, P.S.C. because he was continuing to struggle with lower extremity cellulitis. Dr. Banks noted Walter's previous diagnoses of obesity, hypertension, hyperlipidemia,[8] and borderline diabetes. Dr. Banks also noted that Walter suffered

---

[8] "Hyperlipidemia is an umbrella term that refers to any of several acquired or genetic disorders that result in a high level of lipids (fats, cholesterol and triglycerides) circulating in the blood." Dr. Gregory L. Moneta, Hyperlipidemia, Society for Vascular Surgery, https://vascular.org/patient-resources/vascular-conditions/hyperlipidemia (last visited July 29, 2019).

from lower leg edema[9] and that this likely contributed to his issues with cellulitis. Dr. Banks suggested not using chronic suppressive antibiotics and instead focusing on controlling Walter's edema. Dr. Banks requested for Walter to return to the clinic in a month. [Dkt. 5-7 at 3–4 (R. 214–15).]

In mid-September 2014, Walter visited Dr. Freije for an examination of his legs. Contrary to Dr. Banks's recommendation, Dr. Freije recommended putting Walter on suppressive antibiotic therapy. Dr. Freije also provided Walter with prescription grade medical compression stockings for below his knee. [Dkt. 5-8 at 33–40 (R. 307–14).]

A few days later, Walter participated in a treadmill stress test with Dr. Harvey Feigenbaum at IU Health Methodist Hospital. The test consisted of incline walking and was terminated after nine minutes due to leg fatigue. Dr. Feigenbaum concluded that the stress test results were normal. [Dkt. 5-8 at 43–45 (R. 317–19).]

On October 16, 2014 Walter visited Dr. Freije for a routine checkup. This was a quick visit, and Walter was directed to maintain his current treatment plan and return to Dr. Freije on October 27, 2014. [Dkt. 5-7 at 20–22 (R. 231–33).] On October 27, 2014, Walter returned to Dr. Freije reporting concerns with small sores on the bottom of his left foot. According to Walter, in the past, similar sores had turned into cellulitis. Dr. Freije noted that Walter continued to struggle with hypertension, edema, skin rashes, GERD, shoulder pain, fatigue, and mild

---

[9] Edema is swelling caused by excess fluid trapped in the body's tissues. Edema: Overview, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/edema/symptoms-causes/syc-20366493 (last visited July 29, 2019).

depressive episodes. Dr. Freije gave Walter a new dosage for his heart medications, new medication for his mild depression, and medication for the sores on his feet. His edema was noted to be stable. [Dkt. 5-7 at 17–19 (R. 228–30).]

On November 22, 2014, Walter returned to Dr. Freije because the topical cream prescribed to him in May for his skin rash was not working. Upon examination, Dr. Freije determined that the rash was a reaction to grease that Walter was encountering as a mechanic and altered Walter's medication accordingly. [Dkt. 5-7 at 27–29 (R. 238–240).]

On December 16, 2014, Walter returned to Dr. Freije because he was experiencing chest pain. Dr. Freije diagnosed Walter's pain as pleurisy[10] and gave him medication to resolve this issue. Dr. Freije also noted Walter's restless leg syndrome and gave him medication for it. [Dkt. 5-7 at 55–58 (R. 266–69).]

On January 8, 2015, Walter visited Dr. Andrew Cunningham at IU Health Family Medicine and Internal Medicine South because Dr. Freije was no longer covered by Walter's insurer. [Dkt. 5-8 at 33 (R. 307).] Dr. Cunningham diagnosed Walter with hypertension, a ganglion cyst, obstructive sleep apnea, and chronic insomnia. Walter was prescribed antibiotics and anti-anxiety medication. [Dkt. 5-8 at 28–32 (R. 302–06).]

In January 2015, Walter completed a headache questionnaire. [Dkt. 5-6 at 18 (R.166).] Walter claimed to have been suffering from migraine headaches since

---

[10] Pleurisy occurs when tissue in the lungs becomes irritated and inflamed, which can cause sharp chest pains. Pleurisy and Other Pleural Disorders, National Heart, Lung, and Blood Institute, https://www.nhlbi.nih.gov/health-topics/pleurisy-and-other-pleural-disorders (last visited July 29, 2019).

April 2012. He reported experiencing migraines approximately three times per week, which would last anywhere from three hours to all day. He also represented that during a headache he would lay down in a dark quiet room for a few hours, or longer, if needed. [Dkt. 5-6 at 18 (R. 166).]

On January 27, 2015, Walter was examined by consultative examiner ("CE") Dr. Diane Elrod of the Indiana State Disability Determination Bureau. Dr. Elrod noted that there were no rashes or other issues with Walter's skin, his body systems were normal, his lower extremities had good range of motion and were not swollen. His gait was stable and within normal limits, but he was not able to walk on his toes or on his heels or perform a squat without difficulty. [Dkt. 5-8 at 48–52 (R. 322–26).]

On February 10, 2015, state agency physician Dr. Brill reviewed Walter's medical history and Dr. Elrod's CE report. Dr. Brill concluded that Walter was not disabled and denied Walter's application at the initial level. [Dkt. 5-3 at 2–10 (R. 54–62).]

On March 19, 2015, Walter returned to Dr. Freije for what appears to be a follow up appointment after he had fallen off a ladder and fractured his ribs earlier in the month.[11] His prescriptions for pain medications had expired, so he was given new pain medications. Other than pain management, Walter was doing well overall and his insomnia and restless leg syndrome had improved. [Dkt. 5-8 at 85–89 (R. 359–63.]

---

[11] It is unclear if Walter returned to Dr. Freije because Dr. Freije was back in Walter's insurance network or if Walter was unhappy with Dr. Cunningham.

On June 12, 2015, Walter returned to Dr. Freije for another checkup. At the appointment, Walter noted that his rib pain was better, but that many of his other chronic conditions were either the same or getting worse. Specifically, his shoulder pain and restless leg syndrome had worsened. [Dkt. 5-9 at 24–28 (R. 392–96).][12]

On August 7, 2015, Walter presented to the emergency department of IU Health Methodist complaining of lower left extremity symptoms. He complained of recurrent cellulitis with pain in his groin and swelling and redness in his left leg. Dr. Jason Schaffer noted that Walter's exam was "quite unremarkable," and that Walter had minimal redness and no swelling in his legs. Walter was discharged and instructed to follow up with his primary care doctor in a few days. [Dkt. 5-10 at 52–57 (R. 490–95).]

On February 23, 2016, Walter sought treatment from Dr. Freije because of left hip pain that he experienced while walking. He indicated that he had no pain in the past and nothing popped, but that the pain developed when he walked. Dr. Freije noted that Walter had no swelling or bruising but that he did have decreased range of motion in his left hip and was ambulating with a limp. [Dkt. 5-9 at 17–20 (R. 385–88).] An x-ray was performed on February 26, 2016, which found mild degenerative joint disease of the hips. [Dkt. 5-9 at 28 (R. 396).]

On April 22, 2016, Walter returned to Dr. Freije for a checkup. Walter noted having some hip pain, but there are no notes indicating that he had issues with hip mobility or with walking. Walter was diagnosed with tennis elbow and rectal issues.

---

[12] On October 13, 2015, Walter returned for another checkup and his conditions had not materially changed. [Dkt. 5-9 at 20–24 (R. 388–92).]

Dr. Freije prescribed Walter a topical pain medication for his elbow and developed a treatment regimen for Walter's rectal issues. Dr. Freije also noted that Walter was no longer using his blood pressure medication. [Dkt. 5-9 at 9–13 (R. 377–81).]

On June 24, 2016 state agency physicians Dr. Maura Clark and Dr. David Everetts reviewed Walter's medical history and determined he was not disabled at the reconsideration level. [Dkt. 5-3 at 13–23 (65–75).]

On September 26, 2016, Walter returned to Dr. Freije. Dr. Freije's musculoskeletal physical exam contained no indication of hip pain or walking issues and also stated that Walter had no edema. Walter complained of elbow and shoulder pain and insomnia. Because of the previous diagnosis of diabetes, Walter was given information on diabetes management, a prescription for glucose testing strips, and medication for his tennis elbow and insomnia. [Dkt. 5-9 at 6–9 (R. 374–77).]

On April 4, 2017, Dr. Freije completed a Diabetes Mellitus Residual Functional Capacity Questionnaire for Walter. Dr. Freije reasserted his previous diagnoses of hypertension, diabetes, restless leg syndrome, and iliac vein compression syndrome[13]. Dr. Freije also indicated that Walter's depression contributed to the severity of his symptoms and functional limitations. Based on Walter's physical and emotional impairments, Dr. Freije opined that Walter was incapable of even low stress jobs. [Dkt. 5-10 at 84–85 (R. 522–23).] Dr. Freije also

---

[13] Iliac vein compression syndrome is caused by the compression of the left common iliac vein by the right common iliac vein and can cause lower extremity pain, swelling, and deep vein thrombosis. Katelyn N Brinegar et al., Iliac Vein Compression Syndrome, 7(11) World J. Radiology 375, (2015).

indicated that Walter could walk one city block without severe pain and that he did not require a cane or walking device. [Dkt. 5-10 at 85–86 (R. 523–24).] Dr. Freije marked that Walter would need to alternate between sitting and standing during the work day and would sometimes need to take unscheduled breaks. [Dkt. 5-10 at 86 (R. 524).] He also indicated that Walter would need to elevate his legs with prolonged sitting. [Dkt. 5-10 at 86 (R. 524).] However, even though the questionnaire included questions about how high and what percentage of time during an 8-hour work day Walter's legs should be elevated, Dr. Freije did not answer these questions. [Dkt. 5-10 at 86 (R. 524).] Finally, Dr. Freije indicated that Walter would have "good days" and "bad days" and that he would most likely miss more than four days of work per month. [Dkt. 5-10 at 87 (R. 525).]

Dr. Freije also partially completed the Physical Residual Functional Capacity Questionnaire, which directs the reader to consider "PT evaluation."[14] The parts that are completed mimic the findings of the diabetes questionnaire. [Dkt. 5-10 at 88–92 (R. 256–59).]

### C. ALJ Decision

In determining whether Walter qualified for benefits under the Act, the ALJ went through the five-step analysis required by 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Walter was insured through December 31, 2018 and had not been engaged in substantial gainful activity since April 15, 2014. At step two, the ALJ found that Walter's severe impairments to include: "shoulder problems,

_____

[14] It does not appear that the "PT evaluation" is included in the record.

gastroesophageal reflux disease ("GERD"), chronic venous insufficiency, non-insulin dependent diabetes mellitus type II, history of recurrent cellulitis of the left lower extremity, hypertension, headaches, insomnia, and obesity. [Dkt. 5-2 at 18 (R. 17).]

At step three, the ALJ considered relevant listings for shoulder pain, chronic venous insufficiency, hypertension, GERD, headaches, diabetes, neuropathy, and obesity and determined that Walter did not meet or equal any of the listings. [Dkt. 5-2 at 20–21 (R. 19–20).] Next, the ALJ determined Walter had a residual functional capacity ("RFC") to perform light work with the following exceptions:

- only lifting 20 pounds occasionally and 10 pounds frequently;

- standing and/or walking or combination thereof for a total of 2 of 8 hours and sitting for 6 of 8 hours;

- no climbing of ropes, ladders, or scaffolds; no more than occasional climbing of stairs or ramps;

- no more than occasional stooping or crouching;

- no kneeling or crawling;

- avoid work at unprotected heights, working around dangerous moving machinery, operating a motor vehicle, or working around open flames or large bodies of water;

- no work above shoulder height; and

- work what would allow Walter to alternate to a sitting or standing position for 1 to 2 minutes each hour. [R. 21.]

The ALJ then determined, at step four, that Walter could not perform his past work as a mechanic. At step five, based on the vocational expert's testimony, the ALJ found that Walter could perform the work of an Order Clerk, Charge

Account Clerk, and Final Assembler. Accordingly, the ALJ determined that Walter was not disabled under the Act.

## IV.    Analysis

Walter asserts that substantial evidence fails to support the ALJ's determination that he was not disabled. He argues that the ALJ failed to account for his need to elevate his legs throughout the workday. Additionally, Walter argues that the ALJ's RFC determination was unsupported because it did not account for his headaches. Walter also argues that the ALJ erred at step three by finding that he did not meet any of the listings in the Listing of Impairments. The Court will address each challenge in turn.

### A. Accommodation for Leg Elevation

The Plaintiff first argues that the ALJ's RFC determination should have included an accommodation for elevating his legs periodically throughout the day or, at the very least, the ALJ should have explained why he discounted the treating physician's opinion that Walter needed to elevate his legs with prolonged sitting.  In support of his argument, Walter directs the Court to Dr. Freije's April 4, 2017 Diabetes Mellitus Residual Functional Capacity Questionnaire, where Dr. Freije checked the box indicating that Walter would need to elevate his legs with prolonged sitting. [Dkt. 5-10 at 84–87 (R. 522-25).] The Plaintiff specifically states that a "treating physician wrote a statement documenting that [Walter] must elevate his legs with prolonged sitting . . . [and the] ALJ omitted this requirement from his residual functional capacity without explanation or permissible reasoning."

[Dkt. 11 at 4.] The Plaintiff uses the remainder of this section in his brief to address whether the ALJ should have recontacted Dr. Freije for a clarification of his medical opinion on Walter's need to elevate his legs throughout the day, but clarified at the August 7, 2019 oral argument that the argument is more general, focusing on whether the ALJ provided enough reasoning for discounting Dr. Freije's medical opinion as to leg elevation and for not including that medical opinion in his RFC. In response, the Commissioner maintains that the ALJ appropriately considered and provided the necessary articulation for giving partial weight to Dr. Freije's medical opinion. The Commissioner further argues that the ALJ had sufficient evidence before him to make a disability determination and was, therefore, not required to seek clarification from Dr. Freije regarding his opinion about Plaintiff's leg elevation.

### i. Discounting Treating Physician

Based on the filing date of Walter's application, the treating physician rule applies. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the treating physician rule applies only to claims filed before March 27, 2017). In *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)6), the Seventh Circuit held that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). "An ALJ must offer 'good reasons' for

discounting the opinion of a treating physician." *Scott*, 647 F.3d at 739 (citing

*Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306).

"If an ALJ does not give a treating physician's opinion controlling weight, the

regulations require the ALJ to consider the length, nature, and extent of the

treatment relationship, frequency of examination, the physician's specialty, the

types of tests performed, and the consistency and supportability of the physician's

opinion." *Scott*, 647 F.3d at 740 (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir.

2009)); *see* 20 C.F.R. § 416.927(c). However, so long as the ALJ "minimally

articulates" her reasoning for discounting a treating source opinion, the Court must

uphold the determination. *See Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008)

(affirming denial of benefits where ALJ discussed only two of the relevant factors

laid out in 20 C.F.R. § 404.1527).

Here, the ALJ offers:

> I give Dr. Freije's opinion partial weight in that it supports a range of light
> exertional work. However, his statements that the claimant's impairments
> would likely produce "good days" and "bad days" and that he would miss
> "more than four days per month" (Ex. 16F at 4) is speculative and not
> dispositive of disability. Generally, more weight is given to the opinions of
> treating sources because they are likely to be most able to provide a detailed,
> longitudinal picture of the claimant's impairments (20 CFR 404.1527(d0(2)
> and Social Security Ruling 96-2p). However, the final responsibility for
> deciding the issue of residual functional capacity and the ultimate issue of
> disability is reserved to the Commissioner (20 CFR § 1527(e) and Social
> Security Ruling 96-2p).

[Dkt. 5-2 at 29 (R. 27).] The ALJ makes a concerted effort to point out the two

portions of Dr. Freije's opinion that bleed into the ALJ's function of deciding the

issue of disability, but the ALJ offers no attempt to articulate how Dr. Freije's

opinion relates to the medical evidence, or even how it supports a range of light exertional work.

In this case, the record contains multiple instances of Walter being diagnosed with and treated for leg cellulitis and edema. To be sure, there are medical visits in the record where the doctors note that Walter's cellulitis and edema are stable or well-managed with treatment, but those visits occur in 2014 and 2015. What the Commissioner and the ALJ fail to confront is the medical evidence from Walter's longest treating physician, Dr. Freije, that was completed in April 2017, almost two years after the diagnoses of stable and well-managed leg edema. Clearly, Dr. Freije, the treating physician, determined that Walter in 2017 needed to elevate his legs with prolonged sitting, thus that opinion must be confronted and analyzed by the ALJ.

The Commissioner correctly pointed out at oral argument "that the Seventh Circuit requires that we read the decision as a whole, rather than demand tidy packaging with redundant analyses." *See Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses.")). However, the ALJ's decision offers very little analysis even when taken as a whole. The ALJ's recitation of the medical evidence that contained Walter's diagnoses of edema and cellulitis does not provide a bridge to discount the specific recommendation of leg elevation made by his treating physician, Dr. Freije, in April 2017.

At oral argument, the Commissioner frequently directed the Court's attention to the minimal articulation standard as laid out in *Elder v. Astrue*, 529 F.3d 408 (7th Cir. 2008). In that case, the Court upheld an ALJ's decision that discussed two of the factors listed in 20 C.F.R. § 404.1627, finding the decision minimally articulated the bases for the ALJ's conclusions. Here, the ALJ discusses none of the relevant factors. *See Scott*, 647 F.3d at 740 (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)); *see* 20 C.F.R. § 416.927(c). The ALJ only provides one reason for discounting the entirety of Dr. Freije's medical opinion: because two individual conclusions about absenteeism and Walter having good days and bad days were speculative. This does not qualify as minimal articulation; the ALJ does not attempt to engage with any of the relevant factors.

This issue of leg elevation is particularly sensitive given the vocational expert's testimony that a claimant who needed to elevate his legs above his heart for ten minutes of every hour would likely be precluded from work. Therefore, the Court cannot consider the ALJ's lack of discussion of leg elevation and Dr. Freije's medical opinion to be harmless error.

Accordingly, the Court determines that the ALJ did not provide a logical bridge between the evidence and his conclusions. On remand, the ALJ must address Walter's need for leg elevation and, if the ALJ determines that a leg elevation limitation is not warranted by the record, must provide adequate justification for not including that limitation in his RFC.

*ii. Recontacting Treating Physician*

The Plaintiff offers as a secondary argument that the ALJ should have recontacted Dr. Freije for clarification as to how high and how long Walter should elevate his legs, if that missing information influenced the ALJ's decision not to include a leg elevation limitation in Walter's RFC.

An ALJ may recontact a treating physician to help resolve insufficiencies or inconsistencies if the medical record is insufficient or inadequate. 20 C.F.R. § 404.1520b. Evidence is insufficient if it "does not contain all of the information that [the Administration] need[s] to make [its] determination or decision." 20 C.F.R. § 404.1520b(b). Evidence is inconsistent if it "conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." *Id.* In both scenarios, the agency will attempt to make a disability determination based on the information it has. *See id.* at (b)(1)(2). Thus, an ALJ will only recontact a treating source if he or she cannot make a disability determination based on the evidence already before him or her. *See Skinner v. Astrue*, 478 F.3d 836, 843 (7th Cir. 2007); 20 C.F.R. § 404.1520b; *see also Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled.").

The ALJ here made a disability determination and never indicated that the record was inadequate to make that determination. Moreover, Walter does not

explain why the ALJ should have determined the evidence in the record to be so insufficient or inconsistent as to render him unable to make a disability determination. Instead, Walter cites a collection of authorities giving the ALJ the ability to collect more information, but does not provide any analysis as to how that legal authority applies to this case. Without any analysis from Walter about why the ALJ should have exercised this option, the Court is not persuaded that the ALJ should have recontacted Dr. Freije for clarification.

Accordingly, the ALJ's decision not to seek clarification from Dr. Freije is supported by substantial evidence.

### B. Accommodation for Headaches

Next, Walter claims that the ALJ's failure to account for his headaches in the RFC requires this Court to remand the ALJ's decision. The Commissioner argues that the ALJ's discussion of Walter's headaches was adequate because there was no evidence in the record, other than Walter's own disability report, that demonstrated Walter suffered from headaches.

At step two of his analysis, the ALJ determined that Walter's headaches were a severe impairment. [Dkt. 5-2 at 18 (R. 17).] At step three, the ALJ found that Walter's headaches did not meet a listing. [Dkt. 5-2 at 21 (R. 20).] Then, at step four, the ALJ summarized the headaches questionnaire Walter completed in January 2015. [Dkt. 5-2 at 23 (R. 22).] Ultimately, the ALJ determined that the objective medical evidence did not support Walter's alleged symptoms. [Dkt. 5-2 at 26 (R. 25).]

The ALJ must consider all medically determinable impairments when assessing a claimant's RFC. 20 C.F.R. § 404.1545(a)(2); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, . . . the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."). A claimant's symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect his ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment is present. 20 C.F.R. § 404.1529(b). A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability; there must be medical signs and findings that show the existence of a medical impairment. 42 U.S.C. § 423(d)(5). The claimant must provide the ALJ with medical evidence that the ALJ can use to reach a conclusion about medical impairments and the claimant's ability to work on a sustained basis. *See Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010) (citing *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994)). If the record lacks evidence demonstrating that the impairment affects the claimant's ability to work, then the ALJ may properly conclude the impairment, even if it is severe, does not affect the claimant's ability to work. *See Id.* at 425–26.

Here, the ALJ discussed Walter's headache questionnaire and, ultimately, determined that Walter's headaches did not present any functional limitations. The medical record contains only one reference to headaches, and that is Walter's self-reported headache questionnaire. Like the ALJ in *Denton*, the ALJ here fully

considered all the evidence, and because the record lacked additional support for functional limitations due to headaches, the ALJ concluded there were no such limitations.

Furthermore, Walter's reliance on *Moon v. Colvin*, *Yurt v. Colvin*, and *Moore v. Colvin* is misguided. In each of those cases, claimants produced substantial documentation indicating that they suffered from headaches, and the ALJ either ignored or skewed the evidence. *Moon v. Colvin*, 763 F.3d 718, 721–22 (7th Cir. 2014) (finding the ALJ incorrectly evaluated a claimant's allegation of headaches "despite the undisputed record of years of treatment for migraines"); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) ("We are also troubled by the ALJ's failure to mention Yurt's bifrontal tension headaches."); *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("[T]he ALJ's recitation of the medical evidence fails to recognize the years of records, from at least 2003 onward, by her treating physicians relating Moore's chronic painful migraines . . . ."). Here, the record does not include documentation of complaints of or years of treatment for headaches, so the ALJ cannot be said to have ignored evidence in the record. Thus, these cases are inapplicable to the scenario here.

Accordingly, the Court finds that the ALJ's did not need to include RFC limitations regarding headaches and his RFC determination is supported by substantial evidence. *See Denton*, 596 F.3d at 426.

## C. Challenge to the Listings Determinations

In challenging the ALJ's listings determinations, Walter argues 1) that the ALJ's analysis and discussion of many of the listings was perfunctory, 2) that the ALJ failed to adequately consider Listing 1.00, and 3) that the ALJ should have sought an updated opinion from a medical examiner ("ME"). Each argument will be addressed accordingly.

### i. ALJ's Listings Analysis

As noted above, at step three of the disability determination the ALJ considered relevant listings for shoulder pain, chronic venous insufficiency, hypertension, GERD, diabetes, neuropathy, and obesity, and determined that Walter did not meet or equal any of the listings. [Dkt. 5-2 at 20–21 (R. 19–20).] Walter argues that the ALJ failed to provide an adequate explanation for why his impairments did not meet a listing. [Dkt. 11 at 21.] Walter argues that the ALJ simply offered perfunctory reasons and then concluded that the evidence did not demonstrate that the listing was met. If a claimant has an impairment that meets or equals an impairment found in the Listing of Impairments, a claimant is presumptively eligible for benefits. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citing 20 C.F.R. § 404.1520(d)).

> In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing.' *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). The Listings specify the criteria for qualifying impairments. *Id.* (citing 20 C.F.R. § 404.1525(a)). A claimant may also satisfy a Listing by showing that his impairment is accompanied by symptoms that are equal in

severity to those described in the Listing. 20 C.F.R. § 404.1526.

*Id.*

The Commissioner rebuts Walter's argument, arguing that the ALJ properly considered the evidence regarding all of the listings. [Dkt. 16 at 6–8.] The Commissioner also argues that because Walter's challenge to the ALJ's listing analysis focuses only on the ALJ's analysis of Listing 1.00, Walter has waived any arguments with regard to the other listings.

The Seventh Circuit maintains that if there is no substantial evidence that would support a finding that a listing is met, then the ALJ may rely on a state agency physicians' determination that the claimant is not disabled and it is "unnecessary for the ALJ to articulate [his] reasons for accepting the state agency physicians' determination of not disabled." *Scheck v. Barnhart*, 357 F.3d 697, 700–01 (7th Cir. 2004). Thus, if a state agency physician determines that a listing is not met, an ALJ's opinion does not have to specifically explain why a listing was not met, unless the claimant brings forward evidence that contradicts the state physician's findings. *See id.*; *Sims v. Barnhart*, 309 F.3d 424, 429–30 (7th Cir. 2002).

Here, the state agency physicians found that Walter did not meet any of the listings in the Listing of Impairments. [Dkt. 5-3 at 2–10; Dkt. 5-3 at 13–23.] Walter has failed to provide the Court with substantial evidence that contradicts this finding. *See Scheck*, 357 F.3d at 700–01; *Sims*, 309 F.3d at 429–30. Instead, Walter merely claims that the ALJ's analysis was perfunctory and, except for Listing 1.00,

he does not direct the Court to any evidence in the record that might contradict the state agency physicians' findings. Because the ALJ properly relied on the state physicians' findings, the ALJ was not required to elaborate on why Walter did not meet or equal those impairments.

ii. *Listing 1.00*

Next, Walter claims that the ALJ did not adequately discuss certain evidence in the record pertaining to his ability to ambulate and did not appropriately consider the non-exhaustive list of examples set forth in Listing 1.00(B)(2)(b)(2). Specifically, Walter argues that the ALJ did not consider whether he could walk a block at a reasonable pace on rough or uneven surfaces or carry out routine activities like shopping and banking.

The Commissioner argues that it is Walter's duty to establish that he meets or equals a listing and that he cannot meet this burden because no medical source opined that he met or equaled a listing. [Dkt. 16 at 7.]

Listing 1.00(B) concerns musculoskeletal disorders and requires that an individual's impairment of combination of impairments causes the inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpart. P, App. 1, § 1.00(B). "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.* at (B)(2)(b).

To demonstrate that an ALJ's listing conclusion is not supported by substantial evidence, the claimant must identify evidence in record that was

misstated or ignored and demonstrates that a listing is met or equaled. *See Sims v. Barnhart*, 309 F.3d 424, 429–30 (7th Cir. 2002). There is no evidence to support the finding that Walter met Listing 1.00(B). The evidence Walter points to—multiple hospitalizations for cellulitis, chronic edema, and skin rashes; Dr. Elrod's assessment that he could not walk on bilateral heels and bilateral toes; and Dr. Freije's February 23, 2016 assessment that Walter was ambulating with a limp and had reduced range of motion in his left hip—was in the record and considered by the state agency physicians, Dr. Clark and Dr. Everetts. Walter has failed to present evidence that contradicts the state agency physicians' findings, and their determination that Walter did not meet or equal any listings. Thus, Walter has not directed the Court to any additional evidence that the ALJ ignored or misstated. Moreover, Walter does not explain how the evidence he cites establishes that he cannot walk a block at a reasonable pace on rough or uneven surfaces or carry out routine activities. Because Walter does not point to any evidence that demonstrates a Listing was met or equaled, or to any evidence that was misstated or ignored, the Court upholds the ALJ's decision regarding Listing 1.00.

*iii. Need for Medical Evidence Regarding Equivalence*

Finally, Walter asserts that the ALJ's listings analysis violated Social Security Ruling 96-6p because he did not obtain an updated opinion from a medical examiner ("ME") regarding whether Walter's impairments met or equaled a listing. SSR 96-6p was rescinded on March 27, 2017, and replaced with Social Security

Ruling 17-2p. SSR 17-2p (S.S.A.), 2017 WL 3928306 at *1. The ALJ's decision was rendered a few months later, on August 29, 2017, thus, it is guided by SSR 17-2p.

SSR 17-2p states that in order for an ALJ to find that a claimant's impairments equal a listing, that ALJ must rely on either: (1) a prior administrative medical finding from a medical consultant or psychological consultant at the initial or reconsideration adjudication levels that supports a medical equivalence finding, (2) ME evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or (3) a report from the Appeals Council's medical support staff supporting the medical equivalence finding. *Id.* at *3. If, however, the ALJ believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment," then the ALJ is not required "to obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." *Id.* at *3–4.

Here, the ALJ relied on the opinions of two medical consultants, both of whom found that no listings were met. Walter's challenge to the ALJ's decision does not present any new evidence that these consultants did not consider. Therefore, the ALJ properly relied on the medical consultants' findings to form his belief that the record did not reasonably support an equivalency finding and that he did not need to articulate specific evidence supporting his finding.

Additionally, Walter argues that the agency's Hearing, Appeals and Litigation Law Manual ("HALLEX") required the ALJ to obtain a medical examiner's opinion to determine whether Walter's impairments equal a Listing. However, HALLEX only requires the ALJ to elicit a medical examiner's opinion when (1) "The Appeals Council or Federal court ordered an ME opinion," (2) "[t]here is a question about the accuracy of medical test results reported, requiring evaluation of background medical test data," or (3) "the ALJ is considering finding that the claimant's impairment(s) medically equals a listing." HALLEX I-2-5-34 (S.S.A.), 1994 WL 637370 (last updated Apr. 1, 2016). Because none of these three scenarios exist here, there was no need for the ALJ to call an ME pursuant to HALLEX I-2-5-34.

## V.  CONCLUSION

For the reasons detailed herein, this court **REVERSES** the ALJ's decision denying Plaintiff benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final judgment will issue accordingly.

So ORDERED.

Date: 8/12/2019

*Doris L. Pryor*

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record.